UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FREDERICK J. BOGANS**,

    Plaintiff,

v.                            **CASE NO. 8:09-CV-0682-T-27EAJ**

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case.[1]

In an action for judicial review, the reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703

---

[1]The district court has referred this matter to the undersigned for consideration and a Report and Recommendation. See 28 U.S.C. § 636(b); Local Rule 6.01, M.D. Fla.

F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, the Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir.1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir.1987).

## **Background**

Plaintiff filed applications for DIB and SSI on March 25, 2002, alleging disability beginning June 15, 1998. (T 19) Plaintiff's applications were denied initially and on reconsideration; an administrative hearing was held on August 23, 2006. (Id.) Fifty years old at the time of the hearing, Plaintiff had a tenth-grade education and past work experience as a landscaper/driver. (T 465-66)

On October 20, 2006, an ALJ denied the application for DIB and partially granted the application for SSI. (T 29-30) Although Plaintiff's severe impairments included neck and back injuries, these impairments, individually or in combination, did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T 21-22) The ALJ determined that, prior to October 22, 2005, Plaintiff had a residual functional capacity ("RFC") to perform a limited range of sedentary work and that, beginning on October 22, 2005, Plaintiff had an RFC to perform a more strictly limited range of sedentary work. (T 22, 26) The ALJ found that Plaintiff could not perform past relevant work during the relevant period. (T 27)

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that there were a significant number of jobs in the national economy that Plaintiff could have performed prior to October 22, 2005, such as security monitor, ticket checker, and information clerk. (T 27-28) As of October 22, 2005, however, there were not a significant number of jobs in the national economy that Plaintiff could perform. (T 28-29) Accordingly, the ALJ concluded that Plaintiff was disabled as of October 22, 2005. (T 29-30) On February 5, 2009, the Appeals Council denied review of the ALJ's decision, making it the final decision of the Commissioner. (T 5-7)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issue presented.

## Discussion

Plaintiff argues that the ALJ erred by (1) failing to find Plaintiff's severe impairments included obesity and knee pain; (2) improperly assessing Plaintiff's RFC for the period prior to October 22, 2005; and (3) improperly discrediting Plaintiff's testimony regarding his pain.

**1.    Severe Impairments**

At step two of the five-step disability determination, an ALJ must assess whether a claimant has a severe impairment. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is not severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam). A diagnosis alone is insufficient to establish that an impairment is severe. Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002). The severity of an impairment must be measured "in terms of its effect upon ability to work,

and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

  A. **Obesity**

The medical evidence reflects that Plaintiff was at least 71 inches tall, weighed up to 294 pounds, and was diagnosed with obesity. (T 170, 328, 376) Nonetheless, in January 1999, Sidney Grau, M.D. ("Dr. Grau") noted that Plaintiff was able to move about easily, ascend and descend an examining table without assistance, sit up and lie down unassisted, bend at the waist almost touching the floor, and squat unassisted though he grimaced when resuming an upright position. (T 169-70) In August 2004, Christopher M. Davey, M.D. ("Dr. Davey") observed that Plaintiff, despite a slightly antalgic gait, had a full range of motion and appeared physically fit and very muscular. (T 376-78)

At his administrative hearing, Plaintiff testified that he was six feet tall and weighed 295 pounds, that this was not his normal weight, and that at the time of his last employment he weighed about 230 or 235 pounds. (T 476-77) Plaintiff offered no further testimony regarding his obesity.

Neither Plaintiff nor his examining physicians indicated that Plaintiff's obesity contributed to any functional loss.[2] Accordingly, the ALJ's failure to find Plaintiff's obesity was a severe impairment is supported by substantial evidence. See, e.g., Ingram v. Astrue, No. 8:07-cv-1591-JDW-TBM, 2008 WL 2943287, at *6 (M.D. Fla. July 30, 2008).

  B. **Knee Pain**

---

[2] Plaintiff argues that the height and weight measurements noted by his examining physicians indicate Body Mass Index ("BMI") calculations corresponding with obesity or severe obesity (Dkt. 15 at 8-9). Although BMI levels "describe the extent of obesity," they "do not correlate with any specific degree of functional loss." SSR 02-1p.

4

A December 2003 x-ray report showed posterior spurring at the patella of Plaintiff's left knee and degenerative arthritis with marginal spurring medially and to a lesser degree laterally. (T 345) Later that month, Gregory W. Nestor, M.D. ("Dr. Nestor") noted that Plaintiff had a "history of bilateral knee pain" and "questionable osteoarthritis." (T 341-43) A July 2004 x-ray report showed spurring along the medial and lateral compartment of Plaintiff's right knee, with patellofemoral joint space narrowing and spurring and mild medial joint space narrowing. (T 382) Lori Taylor, M.D. ("Dr. Taylor") diagnosed mild osteoarthritis of the right knee, with no acute process. (Id.) The following month, Dr. Davey noted Plaintiff's slightly antalgic gait but found a full range of motion at all joints and and offered a diagnostic impression of "[k]nee pains, although no arthritic deformity of the knees." (T 377) At the administrative hearing, Plaintiff testified that both of his knees hurt. (T 478)

Although he discussed Dr. Nestor's and Dr. Davey's opinions (T 24-25), the ALJ did not specifically address the x-ray reports or Dr. Taylor's opinion. An ALJ is not required to specifically refer to each piece of evidence in the record, however, so long as the decision is sufficient to allow a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). Neither Plaintiff nor his physicians indicated that Plaintiff's knee pain limited his ability to work. Indeed, there is evidence that the range of motion in Plaintiff's knees was not restricted and that there was no arthritic deformity in his knees. (T 377) Given the absence of medical evidence that Plaintiff was functionally limited by knee pain, the ALJ's determination that Plaintiff's knee pain was not a severe impairment is supported by substantial evidence.

**2.     RFC Before October 22, 2005**

Plaintiff argues that the ALJ's assessment of Plaintiff's RFC prior to October 22, 2005 did not take into account Plaintiff's low back symptoms, knee problems, obesity, personality disorder, and medication side effects.

A claimant's RFC is his ability to do work activities despite physical and mental limitations resulting from his impairments and any related symptoms. 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, the ALJ must consider all the relevant evidence in the case record. Id.

### A.     Low Back Symptoms

In July 1992, Plaintiff underwent an L5 laminectomy, partial L4 laminectomy, L4-L5 discectomy, and bilateral fusion of L4-S1 with plates and pedicle screws. (T 168) Approximately two years later, Plaintiff saw Robert L. Swiggett, Jr., M.D. ("Dr. Swiggett") with complaints of neck and right arm pain. Dr. Swiggett reported that Plaintiff "did quite well" after his discectomy and fusion and had been landscaping. (T 166) He limited Plaintiff to sedentary work due to cervical spine issues. (Id.)

In January 1999, Dr. Grau diagnosed Plaintiff with "[l]ow back syndrome" stemming from the 1992 laminectomy and discectomy. (T 170) Dr. Grau noted that Plaintiff was able to bend at the waist and almost touch the floor and was able to squat unassisted though he grimaced as he returned to an upright position. (T 169-70) The following April, Atulkumar Kshatri, M.D. ("Dr. Kshatri") reported that Plaintiff had no tenderness in the lumbar region. (T 266)

In September 2000, Jeffrey L. Tedder, M.D. ("Dr. Tedder") noted tenderness in Plaintiff's central lumbar region and lumbar paraspinal regions. (T 311) Dr. Tedder restricted Plaintiff from

lifting over 25 pounds and repetitive lifting. (Id.) He also recommended physical therapy with anti-inflammatory and pain analgesic medications as needed. (Id.)

In June 2002, Plaintiff complained to Harry D. Wassel, M.D. ("Dr. Wassel") of "[p]lenty of pain in the low back." (T 327) Dr. Wassel noted some spasm in the paraspinal muscles of the lumbar spine and limited forward and lateral flexion, extension, and rotation in the thoracolumbar spine. (T 329, 331) Dr. Wassel diagnosed Plaintiff with lumbar syndrome and post-laminectomy syndrome. (T 330)

In March 2003, Imtiaz Hossain, M.D. ("Dr. Hossain") indicated that Plaintiff had minimal paraspinous spasm with mild tenderness around, and some limited range of motion of, the lumbar spine. (T 417) Dr. Hossain recommended continued anti-inflammatories, muscle relaxants, and trigger-point injections to relieve spasms. (Id.) Dr. Hossain limited Plaintiff to light-duty work with a 25-pound lifting restriction. (T 418)

The following December, Dr. Nestor noted that Plaintiff was experiencing low back pain. (T 343) He recommended that Plaintiff supplement his pain medication and muscle relaxants with pain management treatment. (Id.)

In August 2004, Plaintiff informed Dr. Davey that his low back hurt constantly and that it hurt to stand for one to two hours. (T 376) Dr. Davey noted that, despite some tenderness, Plaintiff had a full range of motion in his cervical spine and no back spasms. (T 377) He diagnosed Plaintiff with chronic low back pain and cervical pain. (Id.)

Plaintiff testified at his administrative hearing that his whole lower back hurt, mostly on the left side, and that pain originating in his low back radiated down into his leg. (T 470) Plaintiff rated that pain six on a scale of ten and reported that medication decreased the intensity of the pain but did

7

not stop it. (T 472) Plaintiff also testified that it hurt his lower back to bend. (T 483)

The ALJ discussed Plaintiff's low back discectomy and fusion, Plaintiff's testimony regarding his low back pain, and the opinions of Drs. Swiggett, Grau, Kshatri, Tedder, Wassel, Hossain, Nestor, and Davey as they related to Plaintiff's low back symptoms. (T 22-25) While the ALJ did not specifically mention that Dr. Wassel found a reduction of motion in the lumbar spine, the ALJ did mention the diagnoses of lumbar syndrome and post-laminectomy syndrome, which makes clear that the ALJ considered Dr. Wassel's opinion in the context of Plaintiff's low back symptoms. (T 24)

Altogether, there is substantial evidence in the record that, prior to October 22, 2005, Plaintiff's low back symptoms did not limit his ability to do the limited range of sedentary work identified by the ALJ. Plaintiff's physicians offered conservative treatment and restricted him to light or sedentary work. As the ALJ thoroughly considered all the evidence regarding Plaintiff's low back symptoms, there is substantial evidence to support an RFC for a limited range of sedentary work despite those symptoms.

### B. Knee Pain

Plaintiff contends that the ALJ failed to take into account Plaintiff's knee problems when assessing his RFC. As discussed at section 1(B) above, the ALJ addressed Dr. Nestor's assessment of decreased deep tendon reflexes in Plaintiff's knees and Dr. Davey's diagnosis of knee pain with no arthritic deformity of the knees. (T 25) No evidence in the record indicates that Plaintiff suffered functional limitations due to his knee pain. Consequently, Plaintiff's RFC for limited sedentary work prior to October 22, 2005 is supported by substantial evidence despite his knee pain.

### C. Obesity

Plaintiff contends that the ALJ failed to take into account Plaintiff's obesity when assessing his RFC. Although the ALJ did not mention Plaintiff's obesity, the ALJ considered the opinions of Drs. Grau, Wassel, Nestor, and Davey as well as Plaintiff's testimony. (T 23-25) Neither these opinions nor any other evidence suggests that Plaintiff's obesity limited his ability to work. Therefore, the ALJ did not err in assessing Plaintiff's RFC without reference to his obesity. See Hennes v. Comm'r of Soc. Sec. Admin., 130 F. App'x 343, 348 n.11 (11th Cir. 2005) (per curiam) (unpublished) (finding no error where ALJ did not specifically address how claimant's obesity affected her RFC).

### D. Personality Disorder

In February 1999, Kenneth W. Varnadoe, Ph.D. ("Dr. Varnadoe") noted that Plaintiff's medical records indicated a schitzotypal personality disorder which was "apt to persist over time." (T 175) One year later, Linda Appenfeldt, Ph.D. ("Dr. Appenfeldt") diagnosed Plaintiff with bereavement over his mother's death and recommended counseling. (T 282) Dr. Appenfeldt reaffirmed her diagnosis and recommendation almost four years later. (T 350) In August 2004, Peter M. Bursten, Ph.D. ("Dr. Bursten") diagnosed Plaintiff with dysthymic disorder, polysubstance dependence (in reported remission), and adult antisocial behavior. (T 375) Dr. Bursten noted that Plaintiff appeared to have a mild reactive depression associated with chronic life stressors but that the level of depression was not severe or debilitating. (Id.) At the administrative hearing, Plaintiff testified that he was not seeing a psychotherapist and did not have depression or other problems. (T 484)

The ALJ specifically addressed Dr. Bursten's evaluation (T 24-25) but did not mention Dr. Varnadoe's report. That report, however, did not indicate that Plaintiff suffered any functional

9

limitations as a result of a personality disorder. (T 175) Moreover, Plaintiff denied having depression or other problems at the administrative hearing. (T 484) Because the record contains no evidence that Plaintiff was functionally limited by a personality disorder, Plaintiff's RFC is supported by substantial evidence.

### E. Side Effects of Plaintiff's Pain Medication

In assessing a claimant's RFC, an ALJ must consider the possible side effects of medications. 20 C.F.R. § 404.1529(c)(3)(iv). "[W]hen there is evidence in the record that the claimant is taking medications, and it is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability, the ALJ has an obligation to elicit testimony or make findings on the effects of the medications on the ability to work as part of the overall duty to fully develop the record." Leiter v. Astrue, No. 09-15293, 2010 WL 1794177, at *5 (11th Cir. May 6, 2010) (per curiam) (unpublished) (citation and internal quotation marks omitted).

Between June 1998 and October 22, 2005, Plaintiff took medications including Celebrex, Ultram, Motrin, Relafin, Valium, Robaxin, Bextra, Soma, Darvocet, and Flexeril. (T 265, 323-24, 343, 405, 416) In April 2002, Plaintiff identified Celebrex as his only pain medication and asserted there were no side effects. (T 115) One year later, Dr. Hossain advised Plaintiff not to drive if Valium made him drowsy and restricted Plaintiff to light duty work. (T 411) In January 2004, Plaintiff stated that Bextra and a muscle relaxant were his only pain medications and that neither caused side effects. (T 135-36) The following June, Plaintiff reported that his pain medications included Darovocet and Flerexil, which caused a "drowsy feeling," headaches, and lack of concentration. (T 146-47) At the administrative hearing, Plaintiff testified that he was taking Darvocet and Flexeril which caused headaches and, when taken two at a time, sleepiness. (T 481)

10

The ALJ considered and addressed this testimony. (T 22) Dr. Hossain found Plaintiff capable of performing even light work despite potential medication-related drowsiness. (T 411) Irrespective of any medication side-effects, there is substantial evidence to support the ALJ's finding that Plaintiff can perform limited sedentary work. The ALJ did not err in considering the impact of medication side-effects on Plaintiff's ability to work.

**3.    Plaintiff's Credibility**

The Eleventh Circuit has established a three-part pain standard to use when evaluating a claimant's subjective complaints of pain. A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition, or (3) the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).

Where an ALJ declines to credit a claimant's testimony as to pain, the ALJ must articulate explicit and adequate reasons for doing so. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court. Id. A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Id. (citation omitted).

Plaintiff testified that a June 1998 work injury caused him pain in his right shoulder, right arm, neck, lower back, left leg, and both knees. (T 466-67, 478) Plaintiff stated that the pain was constant and rated its intensity at five to six out of ten on a normal day. (T 468, 471-72) He reported that his pain was brought on by lifting 20-25 pounds, walking, standing, bending, and sitting for long periods of time. (T 473, 474, 478-79, 483, 484)

11

During the relevant period before October 22, 2005, Plaintiff was treated for pain primarily with physical therapy, massage, pain medication, muscle relaxants, and anti-inflammatory medication. (T 214, 314, 318, 416) In December 1998, Jeffrey S. Walker, M.D. ("Dr. Walker") indicated that Plaintiff did not desire an operation and wished to proceed with conservative treatment. (T 324) The following September, Dr. Walker reported that Plaintiff "seem[ed] to do fairly good" and that his neck pain was responding to massage therapy. (T 318) In June 2001, Dr. Walker commented that Plaintiff had "finally" gone to physical therapy but made no progress because "they were very busy." (T 315) Dr. Walker surmised that Plaintiff never complained or attempted to remedy the problem and reaffirmed that Plaintiff needed physical therapy. (Id.) Two months later, Plaintiff reported to Dr. Walker that physical therapy was "helping a lot," indicated his desire to continue physical therapy, and rejected pain management and injections because they had failed to relieve his pain in the past. (T 314)

At Dr. Kshatri's recommendation, Plaintiff received an epidural steroid injection for pain in April 1999. (T 263) The following month, Plaintiff declined a second injection, reporting that the first made his pain worse. (T 239)

In January 2000, Ralph E. Rydell, M.D. ("Dr. Rydell") remarked there was some evidence that Plaintiff was exaggerating his symptoms. (T 304) The following April, Dr. Rydell declined to recommend surgery and advised Plaintiff to continue a conservative course of treatment, including a soft cervical collar and anti-inflammatory medications. (T 296) In September 2000, Dr. Tedder recommended "symptomatic treatment as needed," such as remedial physical therapy and pain medication. (T 311) Plaintiff received injections at Dr. Hossain's recommendation in April and May 2003. (T 410, 414)

Throughout his treatment, Plaintiff's physicians opined on his functional abilities. Dr. Swiggett initially limited Plaintiff to sedentary work but later found him capable of light work with a 10-pound lifting restriction. (T 165, 166) Dr. Walker restricted Plaintiff to light work (T 313, 318) while Dr. Rydell restricted Plaintiff to moderate work. (T 296, 304) Dr. Tedder imposed a 25-pound lifting restriction. (T 311) Dr. Hossain consistently found Plaintiff capable of light duty work subject to a 25-pound lifting restriction and no frequent overhead reaching, bending, pulling, pushing, and repetitive lifting. (T 405, 407, 410-11, 418)

The ALJ found that Plaintiff had impairments that could reasonably be expected to produce pain, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his pain prior to October 22, 2005 were not entirely credible. (T 22, 26) The ALJ articulated several reasons for this finding, explaining that "[t]he limitations to which the claimant testified are far in excess of those which reasonably would be expected from the objective clinical findings and are not consistent with all the other medical evidence of record." (T 25-26) The ALJ emphasized that, while Plaintiff claimed he was not able to work at all between June 1998 and October 22, 2005, his physicians found him capable of sedentary and light work activity during that time period. (T 25) The ALJ also noted that Plaintiff's pain treatment during this time period was conservative and that Plaintiff declined at least one form of treatment. (T 25)

The ALJ's reasons for discounting Plaintiff's credibility were adequate. See Wilkinson v. Comm'r of Soc. Sec., 289 F. App'x 384, 386 (11th Cir. 2008) (per curiam) (unpublished) (inconsistency with medical evidence); Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (conservative treatment). Given that Plaintiff's treating physicians consistently disagreed with Plaintiff's characterization of his ability to work prior to October 22, 2005, the ALJ did not err in

13

discounting the credibility of Plaintiff's testimony.

## Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) the decision of the Commissioner be **AFFIRMED** and this case dismissed, with each party to bear its own costs and expenses; and

(2) the Clerk of the Court enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g).

**DONE AND ORDERED** in Tampa, Florida on this 22nd day of June, 2010.

ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge